# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michael Kostenko, D.O.,**
**Plaintiff Below, Petitioner**

**FILED**

January 30, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)   No. 14-0353** (Raleigh County 11-C-70)

**West Virginia Offices of the Insurance Commissioner,**
**Defendant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Michael Kostenko, D.O., appearing *pro se*, appeals the order of the Circuit Court of Raleigh County, entered March 31, 2014, that granted summary judgment to Respondent West Virginia Offices of the Insurance Commissioner ("WVOIC") upon a finding that petitioner's whistleblower action against the WVOIC was barred by the doctrine of *res judicata* and/or the doctrine of collateral estoppel. The WVOIC, by counsel Charles R. Bailey and Kelly C. Morgan, filed a response, and petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner is a doctor of osteopathy licensed in West Virginia, who practiced medicine in Beckley at the Coal Country Clinic. In a February 15, 2008, notice of termination, the WVOIC permanently terminated petitioner's right to receive workers' compensation payments for services rendered to injured employees because he allegedly provided care that was excessive, medically unreasonable, and unethical. *See* W.Va. Code § 23-4-3c(a)(1).[1] In the notice, the WVOIC charged petitioner with three violations:

(1) Administering tendon sheath injections in excess of the treatment guidelines where the documentation did not support the medical necessity for tendon sheath

---

[1] The February 15, 2008 notice of termination, was the second such notice issued against petitioner. However, in a separate proceeding, the Circuit Court of Raleigh County reversed the first order terminating petitioner's right to receive workers' compensation payments and remanded the case for further proceedings consistent with its order, which included the issuance of the February 15, 2008, notice of termination.

1

injections or billing for tendon sheath injections which were not administered, or both;

(2) Allowing massage therapists and other employees to compound and administer I.V.'s and tendon sheath and trigger point injections in violation of the massage therapists' licensing and the laws of the State of West Virginia, and improperly billing workers' compensation for those procedures; and

(3) Engaging in "upcoding" in that petitioner billed for services that implied a higher level of complexity than was documented in the medical records and failing to report and correct fraudulent billing by petitioner's office when it came to his attention, condoning the practice, or directly causing his office to fraudulently bill for services not rendered.

Two days prior to the show cause hearing on the notice of termination, petitioner's counsel informed the hearing examiner and the WVOIC's counsel by letter that he and petitioner would not appear for the show cause hearing. Petitioner's counsel advised that he believed it was not appropriate to subject petitioner to a show cause hearing when petitioner had filed a petition in the Circuit Court of Kanawha County to enjoin the holding of the hearing. However, petitioner's counsel did not request a continuance from the hearing examiner.

At the beginning of the March 25, 2010 show cause hearing, the hearing examiner addressed petitioner's and his counsel's non-appearance by first asking the WVOIC's counsel whether he had informed petitioner's counsel that the hearing would proceed. The WVOIC's counsel indicated that he had so informed petitioner's counsel. Next, the hearing examiner confirmed that he was aware of the petition pending in the Kanawha County court,[2] but ruled that "we're going to go ahead and proceed with the hearing." Following the presentation of the WVOIC's witnesses and evidence at the show cause hearing, the hearing examiner issued a recommended decision on May 12, 2010, that petitioner's right to receive workers' compensation payments should remain terminated permanently. On June 1, 2010, the WVOIC issued a final order adopting the hearing examiner's recommended decision. Petitioner appealed the June 1, 2010, final order in the Circuit Court of Raleigh County in Civil Action. No. 10-AA-14.[3]

---

[2] The Kanawha County proceeding was subsequently stayed pending petitioner's administrative appeal of the WVOIC's action to terminate his right to receive worker compensation payments for medical services rendered. Following the affirmation of the WVOIC's June 1, 2010, final order in No. 10-AA-14 by this Court in *Kostenko v. West Virginia Offices of Insurance Commissioner*, No. 12-1493, 2013 WL 6283835 (W.Va. Supreme Court, December 4, 2013) (memorandum decision), the WVOIC filed a motion for summary judgment in petitioner's Kanawha County case based on the doctrine of *res judicata* and the doctrine of collateral estoppel. The WVOIC was granted summary judgment in that matter by a March 14, 2014, order that petitioner is appealing in another case. *See* Supreme Court No. 14-0352.

[3] West Virginia Code § 23-4-3c(b) provides, in pertinent part, that "[a]ny appeal by the health care provider shall be brought in the circuit court of Kanawha County *or in the county in*

2

Petitioner filed the instant action, Civil Action No. 11-C-70-B in the Circuit Court of Raleigh County on January 28, 2011, requesting the circuit court dismiss the February 15, 2008 notice of termination. In addition to seeking dismissal of the notice, petitioner sought monetary damages pursuant to the West Virginia Whistleblower Law, West Virginia Code §§ 6C-1-1 to 6C-1-8. Petitioner alleged that the WVOIC was acting to terminate his right to receive workers' compensation payments merely as a pretext for retaliating against him for his good faith reporting of abuses within that system.[4]

The WVOIC moved to stay No. 11-C-70-B pending the outcome of petitioner's appeal of its June 1, 2010, final order in No. 10-AA-14. Petitioner opposed the motion. Following a September 7, 2012 hearing, the circuit court granted the WVOIC's motion to stay No. 11-C-70-B, finding that a nexus of determinative facts and procedural issues existed between the two cases. The circuit court explained that "the forthcoming determination of such issues in the administrative appeal [No. 10-AA-14] may fundamentally impact the viability of both [petitioner's] claims and [the WVOIC's] defenses in this civil action [No. 11-C-70-B]."

The circuit court held a final hearing on petitioner's administrative appeal in No. 10-AA-14 on August 21, 2012. After hearing the arguments of counsel, the circuit court entered an order on November 26, 2012, that upheld the WVOIC's final order. The circuit court first determined that West Virginia Code § 23-4-3c(b) required petitioner to appear at the March 25, 2010, show cause hearing. Second, the circuit court ruled that legal authority strongly suggested that petitioner waived his right to complain about the administrative proceedings or any procedural issues when he failed to appear for the show cause hearing, but that it would address the issues raised by petitioner "out of an abundance of precaution." Specifically, the circuit court reviewed the February 15, 2008, notice of termination and the resultant proceedings to ensure that they complied with its remand order that found that the earlier notice of February 18, 2005, was procedurally deficient.[5] The circuit court determined that the February 15, 2008 notice, satisfied due process because it contained more specific charges and details than the February 18, 2005 notice. The circuit court further found that, while petitioner was not provided with an opportunity to fully present his case pursuant to the February 18, 2005 notice, this issue was rendered moot by petitioner's non-appearance at the March 25, 2010 show cause hearing. The circuit court noted that, at the March 25, 2010 hearing, the WVOIC presented the testimony of a former employee of the defunct Workers' Compensation Commission as well as the testimony of Dr. James Baker, who "testified extensively from specific case records, and was highly critical of the petitioner's billing practices for established office visits." The circuit court further noted that, because petitioner and his counsel failed to appear for the March 25, 2010 hearing, the WVOIC's evidence was undisputed.

*which the provider's principal place of business is located.*" (Emphasis omitted.)

[4] In making this claim, petitioner alleged that he was an "employee" of the WVOIC.

[5] *See* fn. 1.

In *Kostenko v. West Virginia Offices of Insurance Commissioner*, No. 12-1493, 2013 WL 6283835 (W.Va. Supreme Court, December 4, 2013) (memorandum decision), this Court affirmed the circuit court's November 26, 2012, order in No. 10-AA-14 that upheld the WVOIC's final order permanently terminating petitioner's right to receive workers' compensation payments for medical services rendered. Consequently, the WVOIC filed a motion for summary judgment in the instant action, No. 11-C-70-B. The circuit court held a hearing on the WVOIC's motion on March 10, 2014. The WVOIC argued that the affirmation of its final order in No. 10-AA-14 resulted in No. 11-C-70-B being barred by the doctrine of res judicata and/or the doctrine of collateral estoppel.[6] When the circuit court asked petitioner[7] why the final adjudication in No. 10-AA-14 did not preclude him from pursuing his action in No. 11-C-70-B, petitioner's only answer was that he "did not come" to the March 25, 2010 show cause hearing. While petitioner believed his procedural due process arguments entitled him not to appear for the show cause hearing, the circuit court determined that neither it, in No. 10-AA-14, nor this Court, in *Kostenko*, affirming the decision in No. 10-AA -14, "found any justifiable grounds for the decision by [petitioner] and his attorney not to attend" the hearing. Accordingly, the circuit court found that petitioner was precluded from pursuing his action in No. 11-C-70-B and granted summary judgment to the WVOIC on the basis of the doctrine of *res judicata* and/or the doctrine collateral estoppel.

Petitioner now appeals the circuit court's March 31, 2014 order, granting the WVOIC summary judgment in the instant action No. 11-C-70-B. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 190, 451 S.E.2d 755, 756 (1994). Pursuant to Rule 56(c) of the West Virginia Rules of Civil Procedure, summary judgment is proper when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Furthermore, "[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party[.]" Syl. Pt. 4, in part, *Painter,* 192 W.Va. at 190, 451 S.E.2d at 756.

<u>The doctrine of *res judicata* does not preclude petitioner's instant action in No. 11-C-70-B</u>

For *res judicata*—also called "claim preclusion"—to preclude a second action, three

_____

[6] In *In Re: B.C.*, 233 W.Va. 130, __, 755 S.E.2d 664, 670 (2014), we stated, as follows:

> The doctrines of *res judicata* and collateral estoppel prevent parties from relitigating in a new action a claim or issue that was definitively settled by a prior judicial decision. The doctrine of *res judicata* essentially requires that the prior and current actions must involve the same parties; the doctrine of collateral estoppel only requires the party against whom the doctrine is invoked to have been a party to the prior action.

(Footnotes omitted.)

[7] By this time, petitioner was acting *pro se*.

elements must coexist: (1) a final adjudication on the merits in the first proceeding; (2) the same parties, or persons in privity with those same parties, as the first proceeding; and (3) a cause of action in the second proceeding that is identical to the cause of action determined in the first proceeding—or such that it could have been resolved, had it been presented, in the first proceeding. *See* Syl. Pt. 1, *Antolini v. West Virginia Division of Natural Resources,* 220 W.Va. 255, 256, 647 S.E.2d 535, 536 (2007) (quoting Syl. Pt. 4, *Blake v. Charleston Area Medical Center, Inc.,* 201 W.Va. 469, 472, 498 S.E.2d 41, 44 (1997)). It is undisputed that the first two elements exist in the instant case. First, there has been a final adjudication on the merits in No. 10-AA-14. *See Kostenko*, 2013 WL 6283835. Second, the parties in No. 10-AA-14 are the same parties as in No. 11-C-70-B: petitioner and the WVOIC.

However, we find that the third element that needs to be satisfied for *res judicata* to bar No. 11-C-70-B is absent. No. 10-AA-14 resolved only whether the WVOIC was incorrect in deciding that petitioner should be terminated from receiving workers' compensation payments for medical services rendered, while No. 11-C-70-B contained the additional claim pursuant to the Whistleblower Law.[8] Because that claim, if successful, would have resulted in monetary damages, we conclude that it neither was identical to petitioner's claim in No. 10-AA-14—that the notice of termination should be reversed—nor capable of being resolved in No. 10-AA-14, which was an administrative appeal, and not an action at law.

<u>The doctrine of collateral estoppel precludes petitioner from re-litigating
whether the WVOIC acted properly in instant action in No. 11-C-70-B</u>

Petitioner argues that the circuit court erred in finding that his present action in No. 11-C-70-B was precluded by the adjudication that occurred in No. 10-AA-14. As discussed, *supra*, petitioner is correct with regard to the application of the doctrine of *res judicata* because No. 11-C-70-B includes a cause of action or claim that No. 10-AA-14 does not. However, the doctrine of collateral estoppel—also called "issue preclusion"—is designed "to foreclose relitigation of *issues* in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit." Syl. Pt. 2, in part, *Conley v. Spillers*, 171 W.Va. 584, 586, 301 S.E.2d 216, 217 (1983). (Emphasis added.) In Syllabus Point 1 of *State v. Miller*, 194 W.Va. 3, 6, 459 S.E.2d 114, 117 (1995), this Court held as follows:

> Collateral estoppel will bar a claim [i.e., issue] if four conditions are met: (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior

---

[8] Under a separate heading in his complaint in No. 11-C-70-B, petitioner alleged a second cause of action, for "total abuse of process." However, having read petitioner's complaint in its entirety, we find that his "total abuse of process" count simply restated his cause of action for retaliation and, therefore, conclude that the retaliation claim was the only additional claim contained in No. 11-C-70-B.

action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

We find that it is undisputed that the second and third elements exist in this case because (a) there has been a final adjudication on the merits in No. 10-AA-14, in which the WVOIC's final order upholding the February 15, 2008, notice of termination was affirmed on appeal by the Raleigh County court and then by this Court in *Kostenko*;[9] and (b) the WVOIC seeks to invoke issue preclusion against petitioner, who was a party to No. 10-AA-14.

We will now discuss the presence of the first and fourth elements of collateral estoppel. With regard to whether the identical issue was decided in the previous matter, we note that the Raleigh County court stayed No. 11-C-70-B pending the outcome of No. 10-AA-14, finding that "the forthcoming determination of such issues in the administrative appeal [No. 10-AA-14] may fundamentally impact the viability of both [petitioner's] claims and [the WVOIC's] defenses in this civil action [No. 11-C-70-B]." Petitioner argues that the circuit court's assessment was incorrect because his administrative appeal did not address whether the WVOIC's reasons for terminating his right to receive payments—determined to be legitimate in No. 10-AA-14—were merely pretextual, which is an issue under the Whistleblower Law. *See* W.Va. Code § 6C-1-4(c). The WVOIC counters that the finding in No. 10-AA-14, that it acted properly in issuing and proceeding on the February 15, 2008, notice of termination, necessarily included a determination that its reasons for termination were not pretextual. We agree with the WVOIC.

Petitioner's allegation of pretext was that the WVOIC proceeded on the notice only as an act of retaliation against him for his good faith reporting of abuses within the workers' compensation system. The best argument petitioner can devise in support of his contention that this facet of his case did not come within the ambit of the issue decided in No. 10-AA-14—whether the WVOIC acted properly in issuing and proceeding on the notice—is that he "did not come" to the March 25, 2010 show cause hearing, to present the necessary evidence. Nothing suggests that petitioner would have not been allowed to fully present his case had he appeared for the hearing. Thus, we determine that, while petitioner made an additional claim in No. 11-C-70-B, the underlying issue was the same: whether the WVOIC properly issued and acted on the February 15, 2008 notice of termination.

With regard to whether petitioner had a full and fair opportunity to litigate the issue in No. 10-AA-14, we initially note that, in *Kostenko*, we affirmed the circuit court's determination that the WVOIC properly issued and proceeded on the notice of termination. *See* 2013 WL 6283835, at *4. Petitioner essentially makes the same ineffective assistance of counsel argument now as he made in his appeal of No. 10-AA-14. In *Kostenko*, we rejected this argument because no evidence existed that petitioner disagreed with his counsel's decision not to appear for the March 25, 2010 show cause hearing. *Id.* Furthermore, as correctly noted by the circuit court, neither it, in No. 10-AA-14, nor this Court, in *Kostenko*, affirming the decision in No. 10-AA-14, "found any justifiable grounds for the decision by [petitioner] and his attorney not to attend" the hearing. *See*

---

[9] 2013 WL 6283835, at *4.

W.Va. Code § 23-4-3c(b) ("The health care provider *shall appear* to show cause why the health care provider's right to receive payment under this chapter should not be suspended or terminated.") (Emphasis added.) It is important that petitioner had an opportunity to present his evidence that the WVOIC proceeded on the notice of termination only as an act of retaliation against him for his good faith reporting of abuses within the workers' compensation system. *See* Syl. Pt. 8, *Conley*, 171 W.Va. at 586, 301 S.E.2d at 218 ("A fundamental due process point relating to the utilization of collateral estoppel is that any person against whom collateral estoppel is asserted must have had a prior opportunity to have litigated his claim [i.e., issue].") But, because petitioner willingly forfeited this first opportunity does not mean that he is entitled to a second opportunity to present his evidence. Thus, we determine that petitioner had a full and fair opportunity to litigate whether the WVOIC acted properly in No. 10-AA-14.

We find that all four elements required for the application of collateral estoppel are present and, therefore, that petitioner is precluded from re-litigating in the instant action, No. 11-C-70-B, the question of whether the WVOIC properly issued and acted on the notice of termination. Therefore, we conclude that the circuit court did not err in granting the WVOIC summary judgment in the instant case because, given that petitioner was barred from re-litigating whether the WVOIC acted properly, no rational trier of fact would find for petitioner. *See* Syl. Pt. 4, *Painter,* 192 W.Va. at 190, 451 S.E.2d at 756.

For the foregoing reasons, we find no error in the decision of the Circuit Court of Raleigh County and affirm its March 31, 2014, order granting summary judgment to the WVOIC.

Affirmed.

**ISSUED:** January 30, 2015

**CONCURRED IN BY:**

**Chief Justice Margaret L. Workman**
**Justice Robin Jean Davis**
**Justice Brent D. Benjamin**
**Justice Menis E. Ketchum**
**Justice Allen H. Loughry**